## Hennessy License

*M. L. McBride*, for appellant.

*William Kuhn*, for Secretary of Revenue.

McKay, J., September 3, 1963.—This case comes before the court upon the appeal of John E. Hennessy from the suspension of his operator's privilege.

On September 28, 1962, at about 10 a. m. while operating his automobile on Center Street, one of the principal streets in the Borough of Grove City, he felt a sense of impending illness and turned his car into

a side street with the intention of bringing it to a stop until the illness would disappear. Before the car had fully stopped he fainted; whereupon, the car continued up over the curb onto the sidewalk and struck a child, causing its death. Subsequently his operator's license was suspended by the Secretary of Revenue on the ground that he had been involved in a fatal accident. The suspension period was for 30 days, during which time appellant did not operate his car. At the end of the 30-day period he applied for reinstatement of his operating privileges, which was denied him on the ground that the medical evidence indicated that he was physically unfit to operate a car. It is from this denial of reinstatement that the present appeal lies.

We held two hearings to determine the question of appellant's physical condition as affecting his fitness to operate an automobile. At the first hearing, held July 9, 1963, the above facts were testified to by police officers. Appellant's personal physician, Dr. James T. File of Stoneboro, testified as to his physical condition and physical ability to operate a motor vehicle. In the course of the testimony it developed that Dr. Oscar A. Turner of Youngstown, a specialist in the field of neurology and neurological surgery who is regarded widely as especially proficient in his specialty, had examined and treated appellant shortly after the accident. Accordingly, we continued the case and made the suggestion to counsel that one of them obtain the testimony of Dr. Turner, if possible, before we made a decision.

At the hearing held this date, September 4, 1963, Dr. Turner testified at length. He said in substance that he examined appellant first in his office on October 10, 1962, and had him committed to a hospital in Youngstown where the doctor examined appellant quite thoroughly. The study included a complete neurological study with the use of electroencephalogram, a spinal

examination, and a pneumoencephalogram in which gases were injected into the cranial cavity through the spine and X-rays were then taken. He said that appellant has a change in his brain somewhat of the nature of a mild atrophy, which is due to his advanced age, 55 years, but that this change is very mild and is comparable with that of other persons of his age. He said that in his opinion the period of unconsciousness was related to that mild atrophy; that the atrophy was a circulation defect and not attributable in any way to epilepsy; and that a gastro illness that appellant had suffered the morning of the accident had probably triggered the blackout. The doctor said that he had prescribed medication to be taken, two capsules a day, and that if appellant continued to take this medication the likelihood of a recurrence of a blackout is very slight, in fact, highly unlikely. Further, he gave it as his opinion that even if appellant stopped taking the medicine, he would not necessarily have another attack.

We are not certain that an opinion could be received from the doctor as to whether it would be safe to let appellant drive an automobile in his present condition but we received it, nevertheless, and it was the doctor's opinion that if he continues to take the medication it would be safe for him to drive an automobile, in fact, safer than for any driver of the age of 75 years or thereabouts who has hardening of the arteries and who might as a result have a heart attack at any time.

This case is one of unusual importance. On the one hand we have the interest of the general public, which in our opinion is paramount. Persons who are susceptible to fainting spells ought not, in the interest of public safety, be permitted to drive an automobile on the highways. On the other hand, we have the interest of appellant himself. He is employed at the Sharon Steel Corporation, 25 miles from his place of residence, and there is no public transportation available. In that

connection it seems to us significant that while appellant has had in his lifetime two previous fainting experiences, they, as well as the present one, were all due to or triggered by a stomach condition, and he has, through the years, worked steadily as a laborer at the steel plant without incidents of any sort.

In the light of the testimony of Dr. Turner, we are satisfied that as long as appellant continues to take the medication which has been prescribed and which he testifies he does take faithfully, there is no reasonable likelihood that the fainting incident out of which this case arose will recur. Being so satisfied, it would be unjust to further deprive him of his operating privileges.

### Order

And now, September 4, 1963, it is ordered that the appeal in this case be sustained and that the Secretary of Revenue restore the operating privileges of appellant, John E. Hennessy.

### Exception

And now, September 4, 1963, an exception to the above order is allowed to the Commonwealth.